# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>BRUCE OLSON,<br><br>Defendant | CASE NO. 1:07-CR-0170 AWI<br><br>**ORDER ON MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**<br><br>(Doc. No. 43) |

On October 22, 2019, Defendant Bruce Olson filed a motion for early termination of supervised release. See Doc. No. 43.

*Background*

On June 22, 2009, following a change of plea pursuant to a plea agreement, Olson was sentenced to 51 months imprisonment and 120 months of supervised release for violation of 18 U.S.C. § 2252(a)(4)(B), possession of material involving the sexual exploitation of minors. See Doc. Nos. 31, 32. The factual basis for Olson's crime involved possession of over 600 images of minors in sexually explicit conduct, including images of prepubescent minors and/or children under the age of twelve. See Doc. No. 27. Olson's term of imprisonment ended on December 21, 2012, and as of the date of this order, Olson has served approximately 84 months of his term of supervised release. Olson's supervised release is set to terminate on December 20, 2022.

On July 31, 2018, Olson filed a motion for early termination of supervised release. See Doc. No. 37. That motion was denied without prejudice to reapplication in one year. See Doc. No. 41.

On October 22, 2019, Olson filed this motion for early termination. See Doc. No. 43.

*Legal Standard*

18 U.S.C. § 3583 *inter alia* permits a court to terminate a term of supervised release, after considering various factors in 18 U.S.C. § 3553. See 18 U.S.C. § 3583(e); United States v. Emmett, 749 F.3d 817, 819 (9th Cir. 2014). Those factors are: (1) the nature and circumstances of the offense and the nature and characteristics of the defendant, see § 3553(a)(1); (2) the need for the sentence imposed to provide adequate deterrence, see § 3553(a)(2)(B); (3) the need for the sentence imposed to protect the public from further crimes by the defendant, see § 3553(a)(2)(C); (4) the need for the sentence to provide the defendant with needed educational, vocational, medical, or other correctional treatment or aide, see § 3553(a)(2)(D); (5) the kind of sentence and the sentencing range established for the applicable category of offense in the sentencing guidelines, see § 3553(a)(4); (6) any pertinent policy statement issued by the Sentencing Commission, see § 3553(a)(5); (7) the need to avoid unwarranted sentence disparities, see § 3553(a)(6); and (8) the need to provide restitution to any victims, see § 3553(a)(7). After considering these factors, a court may terminate supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); Emmett, 749 F.3d at 819. In considering the "interest of justice," the Court may also consider any "undue hardship" that the defendant might be suffering. See Emmett, 749 F.3d at 820. District courts must explain its decision to either grant or deny a motion for early termination of supervised release. See id. at 820-21.

*Defendant's Argument*

Olson argues that he has received intensive sex offender treatment in the Bureau of Prisons and has been continuously enrolled in treatment since his release. He has done well and excelled in therapy provided both by the government's contracted provider (Counseling and Psychotherapy Center ("CPC")) and, since March 2017, a privately retained provider. He plans on continuing private therapy even after his supervised release terminates. His therapist is supportive of early termination and believes that Olson is not a danger to the community and will likely not reoffend. Olson has been able to resume his career in water-well drilling. Although his license was removed after his conviction, he has been allowed to partner with an existing licensed contractor. Olson has

been told that he may apply for relicensing, but his chances of success would be significantly increased if supervised release is terminated early. Further, Olson has been unable to travel to the Central Coast of California to see aging relatives because the probation department of the Central District of California will not approve the travel. Finally, Olson has not violated any terms of his supervised release. Because he has received the maximum benefit of supervised release, and is not a danger to the community, supervised release should be terminated early.

*Government's Argument*

The United States argues that it has contacted Olson's probation officer, and the officer opposes early termination. The probation officer acknowledges that Olson has not had any violations of the terms of supervised release, but Olson has not been 100% committed to sex offender treatment with CPC's program. While attending CPC, Olson was pessimistic and voiced his disinterest during group therapy session and stated that the individual and group therapy sessions were a fraud. Further, in August 2019, Olson took a polygraph examination. Although no violations of the terms of supervised release were discover or disclosed, Olson stated that "it was likely he had masturbated to sexual thoughts of minors." The United States argues that the reasons discussed by the probation officer support a denial of Olson's motion. Further, the United States argues that the need to avoid unwarranted sentence disparities among defendants with similar records and sentences supports a denial of the motion. The United States' counsel, who has worked over 250 child exploitation cases, can think of only one or two cases in which that individual's term of supervised release ended early. Also, considerations of affording adequate deterrence, reflecting the seriousness of the offense, and protecting the public counsel against ending supervised release early. The government has a compelling interest to protect children from sexual exploitation, an interest that the Supreme Court has called "of surpassing importance." Olson was convicted of a serious crime, which warrants serious consequences.

*Defendant's Reply*

Olson argues that the reasons articulated do not warrant a denial of his motion. The probation department made the same point about CPC and his commitment to therapy over a year ago in opposition to his previous motion. The fact remains that the probation department

3

permitted Olson to contract for his own therapy in March 2017 and he has successfully done so ever since. With respect to the polygraph results, Olson contends that the polygraph examination in August 2019 was unlike previous exams. The examiner was contracted through CPC. Olson argues that he remembers the examiner asking, "Is it possible that you had a sexual thought about a minor in the past three years?", and that he believed that he answered "yes, it was possible." The polygraph report has not been submitted, and no allegations of misconduct have been brought or proven. Reliance on a single vague question in an otherwise compliant examination is not a sufficient reason to deny early termination.

*Discussion*

The nature of the offense for which Olson was convicted is very serious. Olson was in possession of over 600 images of minors engaged in sexually explicit conduct. Some of these images were of prepubescent minors. Although Olson did not make the images himself, his conduct in possessing these images creates a demand for those who do make them. His conduct is part of a cycle that endangers, exploits, and harms children in the vilest of ways. The United States correctly notes that it has an exceptionally strong interest in deterring conduct that endangers and sexually exploits children. See New York v. Ferber, 458 U.S. 747, 757 (1982). Therefore, the considerations of § 3553(a)(1) and § 3553(a)(2)(B) counsel against an early termination.

The Court also has concerns regarding Olson's therapy and his reported answer to a polygraph examination. The Court accepts the representation that Olson received therapy in prison and as part of his supervised release. There is no indication that Olson has been anything but compliant with the mental health and sex offender therapy requirements of the terms of his supervised release. The probation office itself approved Olson retaining a private therapist, and that therapist is supportive of Olson's motion. These considerations are supportive of Olson's motion. However, in the prior motion, it was noted that Olson apparently resisted his treatment for a number of years. See Doc. No. 41. In this motion, the resistance is described as pessimism and doubt about therapy. Additionally, the United States represents that Olson said that he likely masturbated to thoughts of minors, and Olson admits that he said it was possible that he

masturbated to thoughts of minors within the last three years. Even accepting Olson's version, there is an admission of ideation and conduct that is serious and concerning because it represents a possible threat to minors. Although Olson remains compliant with all terms of his probation, and thus has broken no laws, Olson's attitude towards therapy over a number of years,[1] combined with his admission regarding masturbation, causes the Court to believe that additional mandatory therapy would be beneficial to Olson and would further protect the public. Therefore, the Court finds that the considerations of § 3553(2)(C) and § 3553(2)(D) counsel against early termination.

The Court further finds persuasive the experience of the United States' counsel. In counsel's experience, early termination for child exploitation cases is exceedingly rare. In counsel's experience, less than 1% of the child exploitation cases have had supervised release terminated early. Granting Olson's motion would shave 36 months off of his 120 month term, a reduction of more than 25%. Olson does not address this consideration. Therefore, in general, the Court agrees with the United States that § 3553(6) counsels against early termination.

In terms of the interests of justice, Olson has identified two considerations. First, Olson indicates that he lost a professional license involving well drilling because of this conviction and that his income was reduced by 33%. However, Olson also admits that he is able to work in the profession with a partner who is licensed, and there is no indication that Olson's income prohibits him from meeting his needs or places him below the poverty line. Indeed, Olson is apparently able to pay for private therapy in order to comply with the terms of supervised release. Further, Olson states that he may reapply for his license. While Olson represents that he has a better chance of success if early termination is achieved, he does not state that he cannot be relicensed unless supervised release terminates early. Therefore, the Court does not find at this time that concerns over a professional license are sufficient to justify early release.

Second, Olson indicates that he has aging family who live in the Central District of California and that he is unable to travel into that district to see them because of the district's hostility towards inter-district travel involving those convicted of sex offenses. No further

---

[1] There may be a point in time when Olson's initial attitude towards therapy will not match his current attitude towards it, as well as years of gain that Olson may have received from it, and his past attitude will no longer be probative. At this time, however, the Court cannot conclude that this point has been reached.

specifics are provided, including any non-physical contact Olson may have with these family members or those family members' ability to travel themselves. Without more, the Court cannot say that an inability to occasionally visit family members in another district is enough to outweigh other considerations.

The Court commends Olson for his compliance with the terms of his supervised release. He has been able to be gainfully employed, does attend therapy, and has had no violations. However, that is what is expected of Olson since these are the terms of his supervised release. See United States v. Fernandes, 2016 U.S. Dist. LEXIS 27056, *2 (D. Nev. Mar. 2, 2016); United States v. Robertson, 2015 U.S. Dist. LEXIS 161084, *5 (N.D. Cal. Nov. 30, 2015); United States v. Sabatino, 2014 U.S. Dist. LEXIS 167738, *4-*7 (N.D. Cal. Dec. 3, 2014); United States v. Flint, 2014 U.S. Dist. LEXIS 112428, *5-*7 (E.D. Cal. Aug. 12, 2014). The Court cannot hold at this time that the relevant § 3553(a) factors support early termination of supervised release.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for early termination of supervised release (Doc. No. 43) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   December 19, 2019

SENIOR DISTRICT JUDGE